[No. 17420.   Department One.   January 5, 1923.]

VANCOUVER NATIONAL BANK, *Respondent*, v. LEWIS P. STARR, *Appellant*.[1]

BILLS AND NOTES (36)—NEGOTIABILITY—STIPULATIONS AND CONDITIONS. A promissory note and contract given for the price of an automobile is non-negotable where, following the usual form for an installment note, it reserves title in the payee until the car is paid for, and the maker agrees to keep the same in repair and pay taxes and insurance and attorney's fees, which are indefinite and uncertain.

SAME (36). Where an instrument in the form of a promissory note is signed but once, evidencing a single agreement, provisions making it non-negotiable cannot be detached and disregarded.

Appeal from a judgment of the superior court for Clarke county, Simpson, J., entered December 27, 1921, upon findings in favor of the plaintiff, in an action on contract, tried to the court.   Reversed.

[1]Reported in 211 Pac. 746.

*Will H. Masters* and *Back, Hall & McMullen,* for appellant.

*McMaster, Hall & Schaffer,* for respondent.

MITCHELL, J.—Lewis P. Starr of Clarke county, Washington, purchased a Stutz automobile in Portland, Oregon, from the Pepp Motor Car Company for which he signed and delivered his written contract to pay $3,350, in monthly instalments of $125 each, with interest at eight per cent per annum. Within a few days thereafter, the Pepp Motor Car Company assigned and delivered the contract to the Vancouver National Bank. Starr paid to the bank on the contract the first three instalments of the principal and all the interest due for the first three months. About that time, he drove the automobile to Portland, where it was seized on behalf of a creditor, who held a duly executed and recorded chattel mortgage on it antedating the sale and delivery to Starr. The mortgage was foreclosed, and the car was sold for an amount insufficient to pay the judgment. Starr refused to make any further payments on his contract, whereupon this suit was instituted by the bank to recover the balance claimed to be due.

The complaint declared upon the instrument, without setting it out, as though it were a plain promissory note payable by instalments. The answer contained a general denial of the alleged cause of action and, also, a cross-complaint setting up the fraud practiced on the defendant by the Pepp Motor Car Company in selling the automobile to him while it was covered by a mortgage of which he had no knowledge; that it had been lost to him by the foreclosure of the mortgage; and that he had paid to the bank $375 and certain interest for which, together with interest on each payment, he demanded judgment against the bank. Upon the trial

of the case, there were findings, conclusions and judgment for plaintiff, as demanded in its complaint. The defendant has appealed.

It does not appear that either of the parties to this action knew that there was a prior outstanding mortgage on the automobile until after the payments by the appellant to the bank.

At the trial, the bank, in its case in chief, introduced the written instrument in evidence. Almost immediately upon commencing the proof on behalf of the defense, upon an objection on behalf of the bank to certain questions, counsel for the appellant stated:

"In this connection, there is no question that the case turns on the question of the negotiability of the note . . . The case stands or falls on the negotiability of the note. We, of course, have no hesitancy in saying the note is not negotiable."

Thereafter, at the conclusion of the testimony on behalf of the appellant, showing among other things the fraud practiced on him by the Pepp Motor Car Company and that the mortgage foreclosure sale failed to produce enough to satisfy the judgment, counsel for the respondent bank announced:

"We have no rebuttal. The case depends, as Mr. Masters says, upon the question of the negotiability of this note. If it was negotiable, then the defendant has no available defense. If it was not a negotiable instrument, then any equities that existed between the original maker and the payee would be available in this case."

So that here is a case that was tried and submitted upon a theory of which there was or is no dispute. Each party had the same theory. It practically amounted to a stipulation. The informal remarks of the trial judge in deciding the case, which have been preserved in the record, show that that was the only question in the case; and in the formal written findings

entered, that idea is, carried out. Neither party pre-
sented or requested any written finding inconsistent
with or qualifying that view.

With this hypothesis, we must, of course, examine
and discuss the instrument. It is too lengthy to be
fully set out herein. It is signed only by the appellant,
Lewis P. Starr. His signature appears thereon at the
bottom of the whole instrument. The first part of the
instrument is in the usual form of a promissory note,
with interest payable on the plan of instalments desig-
nated. Immediately following, it reads, in effect, that
the instrument is given in consideration that the Pepp
Motor Car Company, the second party, upon receipt of
the payments and the carrying out of the other agree-
ments specified, agrees that Starr shall become the
owner of the automobile, describing it, that day deliv-
ered to him, title to the property to remain in the seller
until all payments have been made. Starr agrees to
keep the property in good repair. He agrees to keep
it insured against loss by fire, theft, accident and col-
lision, in favor of the seller to whom the policies should
be delivered. In case he neglects to provide insurance,
the seller may effect it and the premiums, with interest
added to the purchase price of the property, which
Starr agrees to pay with interest. The maker,

"agrees to pay all taxes and assessments or govern-
mental charges whatsoever, whether now provided for,
or hereafter created, that may be hereafter levied or
assessed against or on account of said property, or
this instrument, or the sums called for hereby, or the
contract of conditional sale herein set forth, and to file
with second party governmental vouchers therefor,
promptly upon said payments."

The maker agrees, if he fails to pay any such charges,
taxes or assessments on the property, "or the contract
of conditional sale herein set forth," before delin-
quency, the seller shall have the right to make such

payments and add them to the purchase price of the property which the maker agrees to pay with interest. It is also provided that, in case of failure to make any of the payments thus provided for, the seller is authorized to take and retain the property, and to retain all sums already paid as compensation for depreciation or other expenses arising on account of the use of the property by the maker of the instrument, and as payment for the use of the property, and as liquidated damages for breach of the agreement, and have a remedy over for recovery of the balance of the purchase price. There is also provision for a reasonable attorney's fee in any action to recover either the property or balance due on the purchase price.

The instrument is a contract whereby the maker promised and agreed to do many things other than the payment of a sum certain in money. The amount of the insurance to be carried on the property is uncertain. The charges above and beyond the nominal consideration and interest thereon possess no standard of definiteness. Those amounts are left indeterminate and subject to possible dispute. In part, the charges may be of a future kind of government tax on the property or upon the contract itself not known of at the date of the contract, while of the ordinary kind of tax levied or charged upon the contract, it may differ according to the jurisdictional domicile of the holder of the contract. As was said in *Farquhar v. Fidelity Ins. Co.,* 8 Fed. Cas. 1068, cited and quoted in our case of *Bright v. Offield,* 81 Wash. 442, 143 Pac. 159,

" 'Instruments whose consideration is thus fluctuating and indefinite, and which are laden with such embarrassments to their circulation, could not perform the functions, and therefore do not possess the character of negotiable paper.' "

The case of *Bright v. Offield,* just referred to, was one wherein this court considered an instrument strikingly similar in many of its aspects to the present one. That case enumerated the applicable sections and provisions of our negotiable instruments law, and analyzed the instrument in question in that case with reference to those laws, and reached the conclusion that the instrument was non-negotiable. That case is a complete answer to respondent's contention here that the contract in this case is a negotiable instrument.

However, counsel for the respondent undertakes to distinguish that case from the present one. It is argued that, in the instrument in that case, the provisions for payments and charges that destroyed its negotiability were intermingled with those that provided for the definite or nominal amount, which it is claimed is not so in the present case, especially under the complaint which declared on only that portion of the contract which amounts to a promissory note. To this argument, there are several answers: (1) In its proof, the respondent introduced in evidence the whole instrument which thereby became the basis for the judgment, notwithstanding the limited description of the instrument in the complaint; (2) as already observed, the instrument was signed but once and that was at the conclusion of it; and (3) the negotiability of an instrument, or the lack of it, is to be determined by the character of the obligations undertaken by the maker, under the law, rather than by selected detached portions thereof preferred at the choice of the holder.

Our conclusion is that the contract is not a negotiable instrument, and that, because of the fraud practiced on the appellant by the respondent's assignor, the appellant is entitled to judgment against the respondent in an amount equal to the sum of all payments of principal and interest made to the bank, together with

interest at the legal rate on each to the date of judgment. Some other contentions, of minor importance, made by the respondent have been considered, and whether or not they are properly in the case, in view of the practical agreement of counsel at the trial as to the sole question in the case, we are of the opinion they are without merit.

The judgment is reversed, with directions to the lower court to enter judgment for the appellant, according to the views herein expressed.

PARKER, C. J., HOLCOMB, MACKINTOSH, and BRIDGES, JJ., concur.